**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAMES KEENE,

          Plaintiff,

     v.

GOOGLE LLC,

          Defendant.

Case No. 25-cv-11431

Honorable Thomas M. Durkin

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

THOMAS G. HENTOFF
NICHOLAS G. GAMSE
CLAIRE R. CAHILL
JASON H. CLAYTON
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
THentoff@wc.com

*Counsel for Defendant Google LLC*

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

    A.    James Keene..................................................................................2

    B.    Google AI Overviews ...................................................................3

    C.    At-Issue AI Overviews ................................................................4

    D.    Keene's Correspondence .............................................................7

LEGAL STANDARD.............................................................................................7

ARGUMENT ........................................................................................................8

I.    USERS COULD NOT REASONABLY UNDERSTAND AI OVERVIEW TO BE MAKING STATEMENTS OF FACT....................................................9

    A.    Reasonable Users Would Not Accept as Fact That Keene Was Serving a Life Sentence. ...................................................................10

    B.    It Is Substantially True That Plaintiff Was Convicted of Drug Trafficking. .........13

II.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE GOOGLE ACTED WITH ACTUAL MALICE....................................................15

    A.    Plaintiff Is a Limited Purpose Public Figure............................15

    B.    The Complaint Does Not Allege Google Knowingly Published False Statements. .........17

III.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE GOOGLE DISPLAYED TWO RESPONSES TO THIRD PARTIES. ............................19

CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

### CASES

*Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237 (2014) ................................................14

*Am. Petroleum Inst. v. TechnoMedia Int'l, Inc.*, 699 F. Supp. 2d 258 (D.D.C. 2010) .................20

*Andrews v. At World Props., LLC*, 2023 IL App (1st) 220950.....................................13

*Arpaio v. Zucker*, 414 F. Supp. 3d 84 (D.D.C. 2019) ...............................................9, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................2, 7, 8

*Barbash v. STX Fin., LLC*, 2020 WL 6586155 (S.D.N.Y. Nov. 10, 2020) ...............................17

*Bd. of Forensic Document Exam'rs, Inc. v. ABA*, 922 F.3d 827 (7th Cir. 2019) ...........................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................20

*Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015) .........................................................15

*Brennan v. Kadner*, 814 N.E.2d 951 (Ill. App. Ct. 2004) ..............................................9

*Colleton v. Charleston Water Sys.*, 225 F. Supp. 3d 362 (D.S.C. 2016) ...............................19

*Dilworth v. Dudley*, 75 F.3d 307 (7th Cir. 1996)...................................................17

*Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087 (N.D. Ill. 2016) ..................................11, 14

*Donald J. Trump for President, Inc. v. CNN*, 500 F. Supp. 3d 1349 (N.D. Ga. 2020)..................18

*Drury v. Sanofi-Synthelabo, Inc.*, 292 F. Supp. 2d 1068 (N.D. Ill. 2003) ................................9, 11

*Esco v. City of Chicago*, 107 F.4th 673 (7th Cir. 2024) .................................................18

*Fosnight v. Jones*, 41 F.4th 916 (7th Cir. 2022) .........................................................3

*Gertz v. Welch*, 418 U.S. 323 (1974) .........................................................................15

*Greene v. Paramount Pictures Corp.*, 138 F. Supp. 3d 226 (E.D.N.Y. 2015) .............................17

*Hardiman v. Aslam*, 2019 IL App (1st) 173196 ......................................................14

*Haynes v. Knopf*, 8 F.3d 1222 (7th Cir. 1993)...........................................................13

*Heller v. NBCUniversal, Inc.*, 2016 WL 6573985 (C.D. Cal. Mar. 30, 2016) .............................17

*Hepp v. Ultra Green Energy Servs., LLC*, 2016 WL 1073070 (N.D. Ill. Mar. 16, 2016) ...........3, 4

ii

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011 (Ill. 2008) ..........1, 10

*In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. and Antitrust Litig.*,
    151 F.4th 922 (7th Cir. 2025) ........................................................................................3, 18

*Info. Control Corp. v. Genesis One Comput. Corp.*, 611 F.2d 781 (9th Cir. 1980) ...........9, 12, 13

*Jacobson v. CBS Broad., Inc.*, 2014 IL App (1st) 132480 .........................................................16

*Jones v. Britt Airways, Inc.*, 622 F. Supp. 389 (N.D. Ill. 1985)..................................................19

*Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106 (D.C. Cir. 2017)............................................8, 16

*Law Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122 (7th Cir. 2022) .............................8

*Love v. Simmons*, 2024 WL 809107 (N.D. Ill. Feb. 27, 2024) ....................................................14

*Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824 (N.D. Ill. 2015) ...........................................................13

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) .............................................................13

*Mejia v. Telemundo Mid-Atl. LLC*, 440 F. Supp. 3d 495 (D. Md. 2020).....................................18

*Mendenhall v. FedEx Ground Package Sys., Inc.*,
    2025 WL 371822 (N.D. Ill. Feb. 3, 2025) ...............................................................................19

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)........................................................................18

*New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023) ...................................................3

*Osundairo v. Glandian*, 2024 WL 5186922 (N.D. Ill. Dec. 20, 2024)..........................................16

*Others First, Inc. v. Better Bus. Bureau, Inc.*, 829 F.3d 576 (8th Cir. 2016) ...............................12

*Pace v. Baker-White*, 432 F. Supp. 3d 495 (E.D. Pa. 2020),
    *aff'd*, 860 F. App'x 827 (3d Cir. 2021)...................................................................1, 9, 11, 12

*Pippen v. NBC Universal Media, LLC*,
    2012 WL 12903167 (N.D. Ill. Aug. 2, 2012), *aff'd*, 734 F.3d 610 (7th Cir. 2013)...........15, 19

*Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610 (7th Cir. 2013) ...................................2, 9, 15

*project44, Inc. v. FourKites, Inc.*, 2024 IL 129227 .......................................................................2, 19

*Russo v. Conde Nast Publ'ns*, 806 F. Supp. 603 (E.D. La. 1992) .................................................16

*Simonson v. United Press Int'l, Inc.*, 654 F.2d 478 (7th Cir. 1981) .............................................14

*Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825 (Ill. 2006)................................1, 8, 10

iii

*State ex rel. Balderas v. U.S. Nuclear Regul. Comm'n*, 59 F.4th 1112 (10th Cir. 2023) ...............4

*Swanson v. Baker & McKenzie, LLP*, 2013 WL 1087579 (N.D. Ill. Mar. 14, 2013),
    *aff'd*, 527 F. App'x 572 (7th Cir. 2013)...........................................................................20

*Van Duyn v. Smith*, 527 N.E.2d 1005 (Ill. App. Ct. 1988) ............................................9

*Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287 (D.C. Cir. 1980) ................................17

*Walters v. OpenAI, LLC*, 2025 WL 2979163 (Ga. Super. May 19, 2025).....................11

*Woods v. Evansville Press Co.*, 791 F.2d 480 (7th Cir. 1986).......................................15

*Younge v. Berman*, 2025 IL App (2d) 240354................................................................13

## RULES

Fed. R. Civ. P. 12 ....................................................................................................3, 7, 9

## OTHER AUTHORITIES

2 Hon. Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017) ............................8

Restatement (Second) of Torts § 577 (A.L.I. 1977) .......................................................19

iv

## INTRODUCTION

This case involves new technology but established law. Tried-and-true defamation principles require public figures to plead that a defendant published materially false statements of fact to a third party with actual malice in order to survive a motion to dismiss. *See Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006). Here, James "Jimmy" Keene, a self-described "[c]elebrity, American author, television executive producer, and former FBI operative," alleges that Google LLC defamed him with generative artificial intelligence (AI) summaries called AI Overviews which are displayed at the top of its search results page. Specifically, Keene contends that Google defamed him by responding to search queries about "Jimmy Keene" with AI Overviews that either said that Keene was serving a life sentence or that he had been convicted of drug trafficking. Compl. ¶ 5; Pl.'s Exs. 1-4. But the Complaint fails to state a defamation claim and should be dismissed for multiple reasons.

First, statements are actionable *only* if they are statements of fact. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1022 (Ill. 2008). Here, when viewing AI Overviews in context, reasonable users would understand AI Overviews as a starting point for their search journey and not as conveying definitive facts about Plaintiff. Indeed, Google's search results page outright tells users that AI Overviews "may include mistakes," and provides multiple other contextual elements—including both cautionary language in AI Overview summaries as well as search results that can directly contradict an AI Overview summary—putting reasonable users on notice that AI Overviews are "suggesting possib[le]" answers to user inquiries, "not expressing certainties." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 512 (E.D. Pa. 2020) (dismissing Facebook post defamation claim in part due to presence of disclaimer), *aff'd*, 860 F. App'x 827 (3d Cir. 2021).

Second, the Complaint in any event fails to plausibly allege that Google employees acted with the requisite degree of fault. Plaintiff, a self-acknowledged celebrity who has authored several books including his own memoir, has publicized his background, including as a miniseries on Apple TV, and thereby has taken on the status of a limited public figure regarding commentary on his life's story. He must therefore plausibly plead that Google's AI Overviews were displayed with actual malice. *See Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (affirming dismissal for failing to plausibly allege actual malice). But the Complaint lacks "details sufficient to render [it] plausible" that any Google employee responsible for the content of AI Overviews knew they were false or substantially likely to be false. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This Court should dismiss the Complaint in its entirety.

Third, at a minimum, the Complaint should be partially dismissed as it lacks allegations that, in response to at least two search queries, the allegedly defamatory AI Overviews were seen by anyone other than Plaintiff himself. Statements made only to Plaintiff are not defamatory because they inflict no reputational harm. *See project44, Inc. v. FourKites, Inc.*, 2024 IL 129227, ¶ 20. Yet the Complaint contains no allegation that these AI Overviews were ever seen by third parties. Claims related to those AI Overviews must therefore be dismissed.

## BACKGROUND

### A.     James Keene

James "Jimmy" Keene's rise to public prominence began when he agreed to help the FBI investigate and, eventually, convict suspected serial killer, Larry Hall. Compl. ¶ 5. Keene's story became well known after he authored and published a memoir about his experience as an FBI operative, recounting how, after being convicted of drug conspiracy charges, he made a "[b]argain for [r]edemption" with the FBI by agreeing to work to uncover evidence against Hall in exchange for a pardon. Compl. ¶ 5; Def.'s Ex. 1 (Dkt. Sheet, *USA v. Keene*, No. 96-cr-20074 (C.D. Ill Dec.

19, 1996)).[1]  Apple TV picked up Keene's story and turned it into a miniseries titled *Black Bird*. Compl. ¶ 6.  Keene is now a "[c]elebrity," an author of several books, a television and movie executive producer, and a film consultant.  Compl. ¶¶ 5-7.  Many details about Keene and his story appear online, such as on Keene's Wikipedia page.  Compl. ¶ 17; Pl.'s Ex. 4.

### B.    Google AI Overviews

Google operates a search engine that helps users to navigate and filter the massive amount of internet content by identifying and highlighting relevant content in response to user prompts.  A single search query triggers various features to connect a user most efficiently to relevant and reliable information.  Google Search's most prominent feature is its blue hyperlinks and "snippet" summaries which direct users to webpages that are likely responsive to the user's query.

Google has also developed other features that augment Google Search, including the "AI Overviews" feature.  AI Overviews use a generative AI large language model (LLM) to enhance Google Search by synthesizing online sources and generating natural language summaries of how current sources of information may respond to user queries.  Compl. ¶¶ 11-12; *e.g.*, Pl.'s Exs. 1-4. Google has publicly explained that by synthesizing multiple internet sources at once, AI Overviews provide a "faster and easier" way for users to find the content most responsive to their query in a digestible format, "tak[ing] the work out of searching."  Def.'s Ex. 2 (summary of AI Overviews archived by Wayback Machine on May 30, 2025) ("AI Overviews Summary").[2]

---

[1] On a Rule 12(b)(6) motion to dismiss, this Court may consider exhibits "referred to in the complaint and central to [its] claims."  *In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. and Antitrust Litig.*, 151 F.4th 922, 926 (7th Cir. 2025).  Courts may also "take judicial notice of public court documents and proceedings, such as a docket sheet."  *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022).

[2] The Court may take judicial notice of this webpage.  *See supra* n.1.  "The contents of webpages available through the Wayback Machine constitute facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 303 (D.C. Cir. 2023) (citation omitted); *accord Hepp v. Ultra Green*

3

AI Overviews appear above the blue links at the top of the search results page. The feature highlights top search results by providing in-line hyperlinks within its responses and generating an adjacent panel listing the sources underlying each AI Overview. AI Overviews include, and included during the time period at issue, a notice explaining: "AI responses may include mistakes" as well as a link labeled: "Learn more."[3] That "Learn more" link takes (and took) users to a Google page that summarizes AI Overview's features and cautions users that generative AI technology "is rapidly evolving and improving" and may provide "inaccurate or offensive information." *See* Def.'s Ex. 2 (AI Overviews Summary). That webpage cautions that "AI Overviews can and will make mistakes" and advises users to "[t]hink critically about AI Overview responses" and "[e]xplore results from multiple sources to fact-check important info." *Id.*

This case is about AI Overviews that appeared in Google Search in response to queries about "Jimmy Keene." The Complaint alleges that some responses to four search queries about "Jimmy Keene" in May and June 2025 included two allegedly false and defamatory responses: (1) that "Jimmy Keene" was serving a life sentence without parole for various crimes, Pl.'s Exs. 1-2, 4; and (2) that "Jimmy Keene" was convicted of drug trafficking, Pl.'s Ex. 3.

### C. At-Issue AI Overviews

1. ***AI Overviews 1 & 2.*** According to the Complaint, around May 24 to May 26, 2025,

---

*Energy Servs., LLC*, 2016 WL 1073070, at *2 & n.1 (N.D. Ill. Mar. 16, 2016) (taking judicial notice and citing additional authority).

[3] *See, e.g.*, *More Opportunities for Your Business on Google Search*, Google Ads (May 21, 2025), https://tinyurl.com/34azh5ks (blog post from May 21, 2025, displaying gif of AI Overview for search "how to bring small dogs on flights," archived by Wayback Machine on May 25, 2025) ("Sample Search Page 1"); Google Search, https://tinyurl.com/h2suvet5 (current AI Overview for search "how to bring small dogs on flights") ("Sample Search Page 2"). The Court can take judicial notice of these webpages to show AI Overview's consistent notice language both in May 2025 and today. *See supra* n.2; *State ex rel. Balderas v. U.S. Nuclear Regul. Comm'n*, 59 F.4th 1112, 1120 n.5 (10th Cir. 2023) (fact of webpage's contents was "subject to judicial notice").

some of Plaintiff's friends and acquaintances alerted him to Google Search results that had appeared for the search query "Jimmy Keene net worth." Compl. ¶¶ 14, 21. The search results page that Google generated in response to this query included a box labeled "AI Overview." Pl.'s Ex. 1. The Complaint alleges that when queries for "Jimmy Keene net worth" were run between May 24-26, 2025, the search results displayed at least two different AI Overviews, both of which said that Keene was serving a life sentence without parole. According to one screenshot attached to the Complaint, an unidentified user saw the following AI Overview:

> It appears there might be some confusion as the "Jimmy Keene" mentioned in the search results refers to a criminal, not a celebrity with a known net worth. Jimmy Keene is serving a life sentence without parole for multiple convictions, <u>according to Wikipedia.</u> The search results also mention James R. Keene, a well-known horse racing enthusiast and financier from the late 19th and early 20th centuries, who left $15 million at his death. 🔗

Pl.'s Ex. 1 ("AI Overview 1"); Compl. ¶¶ 14-15.

A link icon, 🔗, appeared at the end of the AI Overview excerpt. Pl.'s Ex. 1. That icon, when clicked, displayed links to the sources that the AI Overview had summarized, including Plaintiff's Wikipedia page. *See* Pl.'s Ex. 1. The same link to Plaintiff's Wikipedia page, [W+1] appeared as an icon above the AI Overview. *See* Pl.'s Ex. 1. And another hyperlink to Plaintiff's Wikipedia page appeared directly below the AI Overview. *See* Pl.'s Ex. 1.

According to the Complaint, another time, in response to an unnamed user's same search query, AI Overviews returned the following:

> It appears there might be some confusion as the "Jimmy Keene" mentioned in the search results refers to a criminal, not a celebrity with a known net worth. Jimmy Keene is serving a life sentence without parole for the murders of three women. There is no publicly available information about Jimmy Keene's net worth, likely because his wealth (if any) is not relevant to his case or public persona. 🔗

Pl.'s Ex. 2 ("AI Overview 2"); Compl. ¶¶ 14, 18-19. That AI Overview again included hyperlinks to sources, including Plaintiff's Wikipedia page, at the end of the paragraph, as well as above the

5

AI Overview's response (as an icon) and below, with a link and "snippet" summary. Though it is not visible in Plaintiff's incomplete exhibit, a notice appeared at the bottom of each AI Overview stating: "AI responses may include mistakes." Sample Search Pages 1-2, *supra* n.3.[4]

2. ***AI Overview 3.*** On May 31, the same query—"Jimmy Keene net worth"—was run on Google Search. According to the Complaint, the search result displayed an AI Overview stating that Keene had been convicted of drug trafficking:

> It appears there are at least two people named Jim or Jimmy Keene who could be being asked about. One is James R. Keene, a 19th-century financial figure, and the other is Jimmy Keene, who was convicted of drug trafficking. The provided search results do not specify the net worth of either Jim or Jimmy Keene. However, it is known that James R. Keene left a significant estate of $15 million upon his death.

Pl.'s Ex. 3 ("AI Overview 3"). The AI Overview again displayed icons above and at the end of that AI Overview, which provided a hyperlink to Plaintiff's Wikipedia page. Pl.'s Ex. 3. And again, a notice appeared at the bottom of each AI Overview stating: "AI responses may include mistakes." Sample Search Pages 1-2, *supra* n.3.

3. ***AI Overview 4.*** Plaintiff alleges that on June 27, 2025, in response to the query "Is Jimmy Keene still alive," Google displayed the following in an AI Overview on the search results page, which also said that Keene was serving a life sentence without parole:

> Yes, Jimmy Keene is still alive. The "Jimmy Keene" mentioned in the context of the Apple TV+ series "Black Bird" is a real person, and he is alive and well. The show is based on his life story, but he was not the James Keene who passed away in 2022, <u>according to an Issuu article</u>. He is serving a life sentence without parole in Butner, North Carolina, <u>according to Wikipedia.</u>

Pl.'s Ex. 4 ("AI Overview 4"); Compl. ¶ 29. Google's search results again returned links to Plaintiff's Wikipedia page. Pl.'s Ex. 4. Once again, a notice appeared at the bottom of each AI

---

[4] Plaintiff's exhibits crop out Google's warning regarding the accuracy of AI Overviews which appeared beneath each AI Overview. The Court should take judicial notice for the reasons stated *supra* notes 1, 2, and 3.

Overview stating: "AI responses may include mistakes." Sample Search Pages 1-2, *supra* n.3.

### D.    Keene's Correspondence

Keene alleges that after the first AI Overview surfaced in May, he submitted an online complaint to Google, Compl. ¶ 23, in which he denied that he was a convicted felon or drug dealer, insisting he had "no criminal record at all" and was "not in prison for life and never was!"[5] Def.'s Ex. 3 ("Keene's First Email").

Within minutes, Keene received an automated response, acknowledging his complaint. Def.'s Ex. 4 ("Google's First Response"). Later that same day, Keene responded, complaining about Google's "robotic reply." Def.'s Ex. 5 ("Keene's Second Email"). On June 24, 2025, Keene received an email explaining that Google was "unable to locate the content" that Keene complained about. Def.'s Ex. 6 ("Google's Second Response").

Keene alleges that he emailed Google again after AI Overview 4 was displayed on June 27 referencing that he was serving a life sentence. According to the Complaint, Google apologized. Compl. ¶ 32. Keene did not attach that alleged correspondence to the Complaint.

On July 30, 2025, Plaintiff sued Google in the Circuit Court of Cook County, Illinois, for one count of defamation per se. Google removed the case to this Court on September 22, 2025.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain enough facts to state a "claim to relief that is plausible on its face," meaning there is enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). This requires more than a showing of "sheer

---

[5] Plaintiff referred to, but did not attach, his emails to Google and Google's responses in his Complaint, so they are incorporated by reference and should be considered by this Court as part of Google's Rule 12(b)(6) motion. *See supra* n.1.

possibility that a defendant has acted unlawfully." *Id.* Courts view the complaint "in the light most favorable to plaintiffs and accept all well-pleaded facts as true." *Law Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022).

For diversity cases involving state-law defamation claims, this Court applies the substantive law of the state in which the case was filed. *Bd. of Forensic Document Exam'rs, Inc. v. ABA*, 922 F.3d 827, 831 (7th Cir. 2019). Illinois defamation law therefore governs the common law defamation claim at issue here. *Id.*

"To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.). Indeed, defamation suits are particularly susceptible to early dismissal because "the central event—the communication about which suit has been brought—is ordinarily before the judge at the pleading stage." 2 Hon. Robert D. Sack, *Sack on Defamation* § 16.2.1, at 16-4 (5th ed. 2017).

## ARGUMENT

To state a claim for defamation per se under Illinois law, Plaintiff must plead that Google made (1) a false statement of fact about him, (2) that was published to a third party, (3) with the requisite fault. *Solaia Tech*, 852 N.E.2d at 839. The Complaint entirely fails on the first and third elements. *First*, reasonable users would not understand Google's AI Overviews about Plaintiff serving a life sentence to be statements of fact because they were on notice that Google's AI Overviews are summative, not authoritative facts, and that they should verify any summaries whose accuracy might be important to them by referring to the webpages linked. And, regardless, the AI Overview about Keene's drug trafficking conviction is substantially true. *Second*, the

8

Complaint does not "point to details sufficient" to show that these AI Overviews were published with actual malice. *Pippen*, 734 F.3d at 614 (affirming Rule 12(b)(6) dismissal). As such, Plaintiff's defamation claim should be dismissed.

Separately, Plaintiff fails to allege the second element, publication, as to two of the allegedly defamatory AI Overviews since there is no allegation that they were seen by anyone else.

## I.  USERS COULD NOT REASONABLY UNDERSTAND AI OVERVIEW TO BE MAKING STATEMENTS OF FACT.

Context is everything in defamation cases. When evaluating whether an "average reader" would "infer that a particular statement has factual content," courts consider the "full context of the statement." *Van Duyn v. Smith*, 527 N.E.2d 1005, 1013 (Ill. App. Ct. 1988) (affirming dismissal for failure to plead facts sufficient to state a claim for defamation); *Info. Control Corp. v. Genesis One Comput. Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) (identifying an "actionable statement of fact requires that the court examine the statement in its totality in the context in which it was uttered or published"). Whether "an alleged defamatory statement is a statement of fact . . . is a question of law." *Brennan v. Kadner*, 814 N.E.2d 951, 957 (Ill. App. Ct. 2004). Accordingly, courts routinely dismiss cases where the statement at issue, in context, is not a false statement of fact. *See id.* at 956, 958-59; *see also, e.g.*, *Drury v. Sanofi-Synthelabo, Inc.*, 292 F. Supp. 2d 1068, 1070-71 (N.D. Ill. 2003); *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 87, 90-91 (D.D.C. 2019); *Pace*, 432 F. Supp. 3d at 512-13 (collecting additional cases).

The Complaint strips the at-issue responses of context by attaching only selective screenshots showing a cropped portion of Google's AI Overviews. Pl.'s Exs. 1-4. But considering these responses in the "full context" of Google's search results page demonstrates that the Complaint has failed to sufficiently allege that any of the AI Overviews were defamatory. As to AI Overviews 1, 2, and 4—that Plaintiff is serving a life sentence—Google's disclaimer, the

cautious language contained in the AI Overviews, and the sources the AI Overviews cited directly contradicting the allegedly defamatory response make clear that no reasonable user would believe these AI Overviews were stating actual facts. And AI Overview 3—that Keene was convicted of drug trafficking—is substantially true.

**A.    Reasonable Users Would Not Accept as Fact That Keene Was Serving a Life Sentence.**

The tort of defamation provides a cause of action only for false statements of fact. *See Solaia Tech.*, 852 N.E.2d at 840. If an "ordinary reader" would not reasonably interpret statements as "stating actual fact," the statements are protected as "opinion[s]" under the First Amendment. *Imperial Apparel*, 882 N.E.2d at 1021-22 (affirming dismissal of defamation claim because statements at issue were not false statements of fact). And Illinois courts distinguish between factual and non-actionable statements based on "several criteria," including whether the "statement has a precise and readily understood meaning," "whether the statement is verifiable," and "whether the statement's literary or social context signals that it has factual content." *Id.*

Multiple indicia would lead a reasonable user not to believe that Plaintiff was serving a life sentence, including Google's own warnings about AI-generated responses, contextual information in the AI Overviews, the AI Overviews' cautionary and equivocal language, and cited sources contradicting the AI Overviews.

First, Google's search results page itself warns users that AI Overviews could be wrong, expressly inviting users to confirm any AI Overview by reviewing non-AI sources. AI Overviews are the starting point for users' research and provide a "snapshot" of key information from search results with links to "dig deeper." *See* Def.'s Ex. 2 (AI Overviews Summary). But because AI Overviews use "rapidly evolving and improving" technology, Google states at the bottom of each AI Overview a disclaimer (which Plaintiff selectively cropped out in his exhibits) warning that AI

10

Overviews "may include mistakes," and provides a link for users to "[l]earn more" about the limits of generative AI. *Id.*; Sample Search Pages 1-2, *supra* n.3.

Courts have recognized that similar disclaimers provide "crucial contextual language" that renders accompanying statements not actionable. *Pace*, 432 F. Supp. 3d at 512-13. While generative AI products are a new technology, the same principles apply. For instance, in another defamation case involving similar AI-generated content, the court held that OpenAI's chatbot, ChatGPT, could not be "reasonably understood as describing actual facts about the plaintiff," in part because ChatGPT warned users "that ChatGPT can and does sometimes provide factually inaccurate information." *Walters v. OpenAI, LLC*, 2025 WL 2979163, at *1-4 (Ga. Super. May 19, 2025) (citation omitted). Likewise, AI Overviews' disclaimer that "AI responses may include mistakes," paired with other contextual clues, *see infra* pp. 11-13, alerted reasonable users that they should not take the at-issue AI Overviews as fact.[6]

Second, reasonable users reading the AI Overviews in the context of the full search results page could easily verify—based on other search results on the same page—that the AI Overviews incorrectly summarized the contents of the Wikipedia page that it relied on. For example, users could click the hyperlink to Keene's Wikipedia page to assess whether the AI Overview summary was accurate. *See Walters*, 2025 WL 2979163, at *4 (reasonable users would not understand ChatGPT to convey actual facts when "within about an hour and a half" a user was able to confirm ChatGPT's output was inaccurate); *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1113-14 (N.D. Ill. 2016) (statement about plaintiff's report was "not actionable as defamation" where it was "immediately followed by the factual basis for that assertion" and the report itself was "shown

---

[6] In *Walters*, many contextual clues only became apparent on a summary judgment record. Here, by contrast, the context available on this motion establishes the Complaint's deficiencies. *See Drury*, 292 F. Supp. 2d at 1070-71.

11

to the right of the statement").  Any user even casually skimming the Google search results page would know that Keene—an author and film producer—was not serving a life sentence.[7]

And third, the AI Overviews themselves conveyed uncertainty about the responses being made.  For example, AI Overviews responded to the user search query, "Jimmy Keene net worth," that it was "confus[ed]" by the query.  *See* Pl.'s Exs. 1-2.  The AI Overviews also noted that there were multiple individuals named "Jimmy Keene" appearing in the search results.  *See* Pl.'s Ex. 1, 2.  And AI Overviews underscored their tentative nature by providing that one of the individuals named "Jimmy Keene" in the search results "appears" to be a criminal.  Pl.'s Exs. 1-2.  These kinds of AI-generated responses particularly call for the reader to use caution and further research before forming any conclusion.

Courts "must give weight" to the use of "cautionary terms," like those appearing in these AI Overviews.  *Info. Control*, 611 F.2d at 784.  When content is couched in cautionary terms or "equivocal language" like "'appears,' 'perhaps,' 'may,' and 'potential,'" *Others First, Inc. v. Better Bus. Bureau, Inc.*, 829 F.3d 576, 582 (8th Cir. 2016), those terms indicate to reasonable readers that the speaker is "suggesting possibilities, not expressing certainties," *Pace*, 432 F. Supp. 3d at 512-13 (dismissing complaint where words such as "'could', '[w]e do not know', 'we believe,'" signaled that the speaker is not communicating "objectively verifiable facts" (citation omitted)); *see also Info. Control*, 611 F.2d at 784 ("Where the language of the statement is

---

[7] It is also implausible that anyone reading the AI Overviews at issue here would be a completely uninformed user.  To see AI Overviews, a "reasonable" user would have needed to enter the search query "Jimmy Keene net worth."  And that, logically, would have only happened if the user had some background knowledge about Keene.  The AI Overview that Keene was "not a celebrity" and that he murdered women (when, in fact, it is well-known that Keene helped put a murderer in prison) would have immediately put a reasonable user on notice that it was not communicating actual facts about Plaintiff.  Indeed, the Complaint alleges that only Keene's "friends and acquaintances" viewed the at-issue AI Overviews.  Compl. ¶¶ 3, 21.  Those individuals would have known that any AI Overview suggesting that Keene was serving a life sentence was incorrect.

cautiously phrased in terms of apparency, . . . the statement is less likely to be understood as a statement of fact rather than as a statement of opinion."); *Haynes v. Knopf*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."). And here, each of these indicia came against the broad public knowledge that, as AI Overviews warned, generative AI features sometimes make mistakes.

Putting all these indicia together, no reasonable user could believe that Google was conveying the actual fact that Plaintiff was serving a life sentence.

### B.     It Is Substantially True That Plaintiff Was Convicted of Drug Trafficking.

The AI Overview that Plaintiff "was convicted of drug trafficking," Pl.'s Ex. 3, is non-actionable for another reason: It is substantially true. "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting" of the statement "be justified." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (citation omitted). In other words, because "truth is an absolute defense to defamation," courts look to "the heart of the matter in question—the hurtfulness of the utterance." *Andrews v. At World Props., LLC*, 2023 IL App (1st) 220950, ¶ 16. Where "no reasonable jury could find that substantial truth had not been established, the question is one of law, and the matter may be raised in a motion to dismiss." *Id.*; *accord Younge v. Berman*, 2025 IL App (2d) 240354, ¶¶ 34, 39-41 (affirming dismissal where statements were substantially true); *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 837 (N.D. Ill. 2015) (dismissing claim where "the Complaint's own allegations show it to be substantially true").

As a matter of law, the AI Overview providing that Plaintiff was convicted of drug trafficking is *substantially* true. Plaintiff's federal criminal record reveals that he was convicted for felony "Conspiracy to Distribute Cocaine," and that he was sentenced to "120 months," *i.e.*, *ten years'* imprisonment as a result. *See* Def.'s Ex. 1 (Dkt. Sheet); *supra* n.1. By any reasonable

layperson's account, Plaintiff was, in fact, convicted of drug trafficking. "The meaning of an allegedly libelous statement is to be determined by the plain and ordinary meaning of the word," so the statement is "in no manner made false by substituting" colloquial language "for an exact legalism." *Simonson v. United Press Int'l, Inc.*, 654 F.2d 478, 482 (7th Cir. 1981). It is therefore "irrelevant whether trained lawyers or judges might with the luxury of time have chosen more precise words." *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 255 (2014).

That Plaintiff "absolved himself of any wrongdoings" by "helping the FBI secure evidence and proof against" serial killer Larry Hall does not make these AI Overviews substantially untrue. Compl. ¶ 5. Even where a criminal conviction is "expunged," a statement that "use[s] an incorrect legal term to describe the current status of" a plaintiff's criminal charges is still "substantially true." *Hardiman v. Aslam*, 2019 IL App (1st) 173196, ¶ 23; *see also Love v. Simmons*, 2024 WL 809107, at *5 (N.D. Ill. Feb. 27, 2024) (dismissing complaint where statement "accurately portray[ed]" plaintiff "in a moment of time several decades ago" and so "the allegedly defamatory statement [wa]s a *historical* truth, even if it is not a *current* truth").

The substantial truth of this AI Overview is even more apparent given that, as discussed above, Google's search results page included a warning that "AI responses may include mistakes" and provided a link (and icon) directing users to Plaintiff's Wikipedia page—a page that *itself explains that Plaintiff's criminal record was expunged. See, e.g.*, *Arpaio*, 414 F. Supp. 3d at 90-91 (dismissing complaint where "mistake in legal nomenclature" was "substantially true," particularly where statement was "contextualized by the report that immediately followed the erroneous statement"); *Doctor's Data*, 170 F. Supp. 3d at 1113-14 (no defamation where statement characterizing source was accompanied by that source).

## II.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE GOOGLE ACTED WITH ACTUAL MALICE.

The Complaint also fails to plausibly plead that any Google employees acted with the requisite fault.  *Pippen*, 734 F.3d at 614.  Plaintiff—a self-described celebrity, memoir author, and the subject of an Apple TV miniseries—has placed himself and his life's story in the public eye. Compl. ¶¶ 5-6.  In doing so, he has taken on the status of a limited public figure regarding commentary on his life's story.  The First Amendment protects that commentary (even false commentary) unless Plaintiff sufficiently alleges that Google made or published statements with "actual malice," meaning Google was "actually aware" that the statements were false or acted with a "high degree of awareness of [their] probable falsity."  *Woods v. Evansville Press Co.*, 791 F.2d 480, 484-85 (7th Cir. 1986).  A "bare conclusory claim of malice, unaccompanied by allegations from which the required subjective element of malice might be inferred, is insufficient to survive a motion to dismiss."  *Pippen v. NBC Universal Media, LLC*, 2012 WL 12903167, at *2 (N.D. Ill. Aug. 2, 2012), *aff'd*, 734 F.3d 610; *accord Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015) ("Our sister circuits . . . agree" that "malice must be alleged plausibly." (citing *Pippen*, 734 F.3d 610)).  The Complaint should be dismissed for not plausibly alleging that Google knew the AI Overviews were materially false when displayed.

### A.    Plaintiff Is a Limited Purpose Public Figure.

Limited purpose public figures, like Keene, have "voluntarily inject[ed]" themselves into "a particular public controversy" and must show actual malice for statements made about them within the context of that controversy.  *Gertz v. Welch*, 418 U.S. 323, 351 (1974).  Illinois has adopted a three-part test for identifying limited purpose public figures, assessing whether (1) there is a "public controversy;" (2) the plaintiff took "some voluntary act seeking to influence the resolution of the issues involved;" and (3) the alleged defamation is "germane to the plaintiff's

participation in the controversy." *Jacobson v. CBS Broad., Inc.*, 2014 IL App (1st) 132480, ¶ 31. Here, Keene, a self-proclaimed "[c]elebrity," qualifies as a limited purpose public figure based on his involvement in the capture and trial of a serial killer and by later recounting his story in his memoir and in an Apple TV series. Compl. ¶ 5. AI Overviews about Keene were "germane" to Keene's involvement in that controversy.

First, the investigation and prosecution of a serial killer, Larry Hall, qualifies as a public controversy. Such high-profile criminal investigations are often characterized as public controversies due to the public attention they attract. *Jacobson*, 2014 IL App (1st) 132480, ¶ 32 (public controversy where "large segments of the public, at least locally, were following the developing investigation" into a disappearance); *see also Kahl*, 856 F.3d at 114 (public controversy where press "extensively covered" murder and trial). And the Complaint's allegations that Keene became "well known" for his role in the FBI's investigation and that the story of the investigation was recounted in an Apple TV miniseries are sufficient to show that the Larry Hall case "generated significant public attention." Compl. ¶ 5; *Jacobson*, 2014 IL App (1st) 132480, ¶ 32.

Second, Keene voluntarily involved himself in this public controversy by dramatically publicizing his involvement as an undercover FBI operative following Hall's conviction. Informants or witnesses in criminal trials qualify as public figures when they have "sought the limelight" with regard to the case. *E.g.*, *Russo v. Conde Nast Publ'ns*, 806 F. Supp. 603, 609 (E.D. La. 1992); *Osundairo v. Glandian*, 2024 WL 5186922, at *4 (N.D. Ill. Dec. 20, 2024) (plaintiffs injected themselves into a public controversy when they attacked an actor and then participated in a documentary and book about the attack). Here, Keene assumed a public role in the Larry Hall controversy by publishing an autobiography and then producing an Apple TV series about his involvement in Hall's prosecution. Compl. ¶ 5. As the Seventh Circuit has recognized, "anyone

16

who publishes becomes a public figure in the world bounded by the readership of the literature to which he has contributed." *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996). Thus, the author of a memoir becomes a public figure for the purposes of commentary on his background and history. *See Barbash v. STX Fin., LLC*, 2020 WL 6586155, at *6 (S.D.N.Y. Nov. 10, 2020) (individual who published memoir about her life and gave interviews was a limited-purpose public figure); *Greene v. Paramount Pictures Corp.*, 138 F. Supp. 3d 226, 237 (E.D.N.Y. 2015) (same where plaintiff published his life story in a memoir); *Heller v. NBCUniversal, Inc.*, 2016 WL 6573985, at *5 (C.D. Cal. Mar. 30, 2016) (same).

Third, AI Overviews about Keene were "germane" to the public controversy, meaning that they were at least relevant or related to the controversy. *Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287, 1298 (D.C. Cir. 1980). Keene became involved in Hall's investigation only because he made a "[b]argain for [r]edemption," agreeing to investigate Hall in return for expunging his own criminal record. Compl. ¶ 5. AI Overviews referencing his background and criminal history were thus directly related to the circumstances that gave rise to Keene becoming an FBI operative and the Hall investigation.

### B. The Complaint Does Not Allege Google Knowingly Published False Statements.

Plaintiff's Complaint is based on AI Overviews that he is "serving a life sentence" for various convictions and that he was "convicted of drug trafficking." Plaintiff's lone theory that Google acted with actual malice is based on the allegations in the Complaint that even after Plaintiff emailed Google that AI Overviews contained misstatements about him, Google continued displaying AI Overviews providing that Keene was serving a life sentence and had multiple convictions. Compl. ¶ 33-35. But the Complaint's threadbare allegations are insufficient to plausibly establish actual malice, for two reasons.

17

First, a plaintiff must "br[ing] home" the state of mind required for actual malice "to the persons in the . . . organization having responsibility for the publication" at issue. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964). But here, Keene fails to allege that he informed parties responsible for AI Overviews that the statements were false and that those individuals continued displaying AI Overviews with disregard of their probable falsity. Courts regularly dismiss defamation claims for failure to plausibly allege actual malice where, as here, the complaint lacks allegations about the fault of those actually responsible for the allegedly defamatory statements. *See, e.g.*, *Mejia v. Telemundo Mid-Atl. LLC*, 440 F. Supp. 3d 495, 502 (D. Md. 2020) (granting motion to dismiss because plaintiff had not "brought home" knowledge of falsity to the "individual in charge of Defendant's [allegedly defamatory] banners" (citation omitted)); *Donald J. Trump for President, Inc. v. CNN*, 500 F. Supp. 3d 1349, 1357 n.4 (N.D. Ga. 2020) (granting motion to dismiss where "the complaint does not connect the CNN staff members . . . to the specific article in question").

Second, Plaintiff's actual correspondence with Google about AI Overviews directly contradicts the limited allegations in Plaintiff's Complaint that Google repeatedly "acknowledg[ed] and then "apologiz[ed]" for AI Overviews' content.[8] Neither Google's May 25 response that it "cannot remove content from third-party web pages" nor its June 24 response that it was "unable to locate the content in question" acknowledged that Google was making any false statements. Def.'s Exs. 4 (Google First Response), 6 (Google Second Response). Indeed, Keene himself admitted that Google's "robotic replies . . . do not mean anything at all." Def.'s Ex. 5

---

[8] Plaintiff's correspondence with Google, incorporated by reference into his Complaint, controls if it contradicts his allegations. *See Esco v. City of Chicago*, 107 F.4th 673, 678-79 (7th Cir. 2024); *In re Harley-Davidson*, 151 F.4th at 926 (exhibits attached to motion to dismiss would control if they contradicted complaint); *supra* n.1.

(Keene Second Email).  Such responses cannot establish actual malice.

Because the Complaint lacks sufficient facts to plausibly allege that Google employees responsible for AI Overviews acted with actual malice, it must be dismissed.  *Pippen*, 2012 WL 12903167, at *2; *see also Mendenhall v. FedEx Ground Package Sys., Inc.*, 2025 WL 371822, at *3 (N.D. Ill. Feb. 3, 2025) (dismissing for failure to plead actual malice).

## III.  THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE GOOGLE DISPLAYED TWO RESPONSES TO THIRD PARTIES.

Statements are not actionable if the defendant published them only to the plaintiff. *project44, Inc.*, 2024 IL 129227, ¶ 20.  There is, after all, no damage done to the plaintiff's reputation if he alone sees false statements about himself.  Restatement (Second) of Torts § 577 cmt. b (A.L.I. 1977).  So to survive a motion to dismiss, Plaintiff must plausibly allege that Google "made an unprivileged publication" of the at-issue statements to a "third party," *i.e.*, someone other than himself.  *project44*, 2024 IL 129227, ¶ 20.

The Complaint never identifies, even in general terms, who viewed AI Overview 3 (that Plaintiff was "convicted of drug trafficking,") or AI Overview 4 (that Keene "is serving a life sentence without parole").  The Complaint never names a Google Search user, or even states that an unnamed "friend" entered the corresponding queries.  Compl. ¶¶ 25-26.  Plaintiff tellingly uses the passive voice to describe these searches, and he fails to allege that anyone other than he or his attorneys viewed these AI Overviews.  That is insufficient.[9]  *See Colleton v. Charleston Water Sys.*, 225 F. Supp. 3d 362, 369 (D.S.C. 2016) (dismissing complaint alleging only that defendant's defamatory statement "was heard" because defendants "cannot be expected to defend against"

---

[9] A defendant's defamatory statement made "in response to [plaintiff's] attorney's inquiry," is "equivalent to a publication to plaintiff himself, and therefore is privileged and is not actionable." *Jones v. Britt Airways, Inc.*, 622 F. Supp. 389, 392 (N.D. Ill. 1985); Restatement (Second) § 577 cmt. e.

allegations that they were "heard by unknown persons at an unknown place at an unknown time"); *Swanson v. Baker & McKenzie, LLP*, 2013 WL 1087579, at *7 (N.D. Ill. Mar. 14, 2013) (St. Eve, J.) (dismissing complaint for failure to "offer any factual basis for allegations that" defamatory statements were published to third parties), *aff'd*, 527 F. App'x 572 (7th Cir. 2013); *Am. Petroleum Inst. v. TechnoMedia Int'l, Inc.*, 699 F. Supp. 2d 258, 268 (D.D.C. 2010) (complaint failed to "adequately identify third parties, or listeners, with sufficient specificity to enable the defendant to answer the complaint" (cleaned up)).

Because the Complaint provides no details about who viewed the at-issue AI Overviews, this Court has no reason to infer that Google published it to a third party, rather than to Plaintiff or his attorneys. Plaintiff has not pleaded facts that would "nudge[]" his claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## CONCLUSION

For the foregoing reasons, Google respectfully moves the Court to dismiss the Complaint with prejudice.

Dated:  November 5, 2025

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:  */s/ Thomas G. Hentoff*

THOMAS G. HENTOFF
NICHOLAS G. GAMSE
CLAIRE R. CAHILL
JASON H. CLAYTON
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
THentoff@wc.com

*Counsel for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the court.  On this date I further caused a copy of the foregoing document to be served on the individuals listed below via U.S. Mail and email:

T. Paul S. Chawla
Oak Brook Legal, P.C.
3908 N. Cass Ave.
Westmont, IL 60559
tschawla@oakbrooklegal.com

*Counsel for Plaintiff*

*/s/ Thomas G. Hentoff*
THOMAS G. HENTOFF