**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JAMES KEENE,

Plaintiff,

v.

GOOGLE, LLC,

Defendant.

Case No. 1:25-cv-11431

Honorable Thomas M. Durkin

**PLAINTIFF'S RESPONSE MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

T. Paul S. Chawla
Jeffrey M. Pelton
ARDC No.: 6206722
Oak Brook Legal, P.C.
3908 N. Cass Ave.
Westmont, IL 60559
Tel.: 630 325-5557
tschawla@oakbrooklegal.com
jpelton@oakbrooklegal.com

*Counsel for Plaintiff, James Keene*

**TABLE OF CONTENTS**

**INTRODUCTION** .......... 1

**LEGAL STANDARD** .......... 3

**ARGUMENT** .......... 4

**I.**

**THE AI OVERVIEWS CONTAIN ACTIONABLE STATEMENTS OF FACT** .......... 4

**A.**
**Disclaimers and/or Hyperlinks to Outside Citations Do Not Convert Verifiable Factual Assertions into Non-Factual Assertions** .......... 4

B.
**Qualifying or Prefatory Language Does Not Negate the Factual Implication** .......... 10

**II.**

**PLAINTIFF HAS ADEQUATELY ALLEGED ACTUAL MALICE** .......... 13

**III.**
**GOOGLE'S SUBSTANTIAL TRUTH ARGUMENT FAILS AT THE PLEADING STAGE** .......... 15

**IV.**
**DEFICIENCIES IN PLEADING MAY BE RECTIFIED BY LEAVE TO REPLEAD** .......... 16

**CONCLUSION** .......... 17

**TABLE OF AUTHORITIES**

**Cases**

*Afro-American Publishing Co. v. Jaffe*,
125 U.S. App. D.C. 70, 366 F.2d 649 (1966) .......... 8

*Andrews v. At World Properties, LLC*,
2023 IL App (1st) 220950 .......... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*Board of Forensic Document Examiners, Inc. v. American Bar Association*,
922 F.3d 827 (7th Cir. 2019) .......... 3

*Cobbs v. Chicago Defender*,
308 Ill. App. 55, 31 N.E.2d 323 (1st Dist. 1941) .......... 11

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 16

*Frain Group, Inc. v. Steve's Frozen Chillers, Inc.*,
No. 14 C 7097, 2015 U.S. Dist. LEXIS 29435
(N.D. Ill. Mar. 10, 2015) .......... 6

*Giant Screen Sports v. Canadian Imperial Bank of Commerce*,
553 F.3d 527 (7th Cir. 2009) .......... 11

*Haynes v. Alfred A. Knopf, Inc.*,
8 F.3d 1222 (7th Cir. 1993) .......... 11

*Information Control Corp. v. Genesis One Computer Corp.*,
611 F.2d 781 (9th Cir. 1980) .......... 6

*Law Offices of David Freydin, P.C. v. Chamara*,
24 F.4th 1122 (7th Cir. 2022) .......... 3

*Madison v. Frazier*,
539 F.3d 646 (7th Cir. 2008) .......... 6

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991) .......... 15

*Meja v. Telemundo Mid-Atlantic, LLC*,
440 F. Supp. 3d 440 (D. Md. 2020) .......................................................................... 14

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ..................................................................................................... 13

*Norfolk Post Corp. v. Wright*,
140 Va. 735, 125 S.E. 656 (1924) ................................................................................ 8

*Pace v. Baker-White*,
432 F. Supp. 3d 495 (E.D. Pa. 2020) ........................................................................... 9

*Pratt v. Pioneer Press*,
30 Minn. 41, 14 N.W. 62 (1882) .................................................................................. 8

*Sprouse v. Clay Communications, Inc.*,
158 W. Va. 427, 211 S.E.2d 674 (1975) ...................................................................... 7

*Stanard v. Nygren*,
658 F.3d 792 (7th Cir. 2011) ...................................................................................... 16

*Takieh v. O'Meara*,
497 P.3d 1000 (Ariz. Ct. App. 2021) ........................................................................... 6

*Van Duyn v. Smith*,
173 N.J. Super. 468, 414 A.2d 118 (App. Div. 1980) ................................................. 7

*Walters v. OpenAI, LLC*,
2025 Ga. Super. LEXIS 2747 ....................................................................................... 9

**Statutes and Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 3

Federal Rule of Civil Procedure 15(a)(2) ................................................................... 16

**Restatements**

Restatement (Second) of Torts § 581A ........................................................................ 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES KEENE,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case No. 1:25-cv-11431<br><br>Honorable Thomas M. Durkin |

**PLAINTIFF'S RESPONSE MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COMES James Keene (the "Plaintiff") by and through his counsel, T. Paul S. Chawla, of Oak Brook Legal, P.C., and for Plaintiff's Response Memorandum of Law in Opposition to Defendant Google LLC ("Google")'s Motion to Dismiss Plaintiff's Complaint, states as follows:

## INTRODUCTION

Plaintiff is a public figure, American author, television executive producer, and former confidential FBI operative. He is the author of several books, including the memoir *In with the Devil: A Fallen Hero, a Serial Killer, and a Dangerous Bargain for Redemption* (2010), which recounts his cooperation with federal authorities in an undercover operation involving serial

killer Larry Hall. As part of that operation, Plaintiff assisted the FBI in obtaining incriminating evidence against Hall, who was ultimately convicted of multiple murders. Plaintiff's role in that investigation and his personal history were later adapted into the Apple TV+ limited series *Black Bird*, based on Plaintiff's memoir.

Plaintiff continues to work in the entertainment industry as an executive producer and consultant on film and television projects, including projects associated with Paramount Pictures. He is also the owner of a real estate development company and other business ventures.

Beginning around Memorial Day Weekend, in May of 2025, Plaintiff was made aware of certain misrepresentations, inaccuracies, and falsehoods being published by Google's AI system about Plaintiff. Plaintiff notified Google of his concerns, received responses which did not realistically commit to fixing the problem, and when it became evident that the continued false publications were not going to stop, Plaintiff sought counsel and filed suit for defamation against Google.

Google seeks dismissal of Plaintiff's cause of action alleging serious defamatory statements published by Google through its AI Overviews feature. These Overviews falsely claim that Plaintiff is "serving a life sentence without parole for the murder of 3 women" and that he "was convicted of drug trafficking," among other statements. Google argues that no reasonable user would understand these assertions as factual because the AI Overview content generated by Google supposedly carries a general AI disclaimer, contains hyperlinks to other materials, and uses occasional qualifying or equivocal phrasing (according to Google). These arguments are inconsistent with settled defamation principles. The question is what a reasonable reader would understand based on the text Google's AI presented in bold, authoritative form at the top of Plaintiff's search results. A reasonable reader would view these statements as factual

assertions, and Plaintiff has adequately pled falsity, fault, and publication. Furthermore, Google's assertion that it always provides a disclaimer which is readily apparent to Google's users is disputed by Plaintiff and constitutes a question of fact inappropriately addressed at the motion to dismiss stage. Where Google argues that Plaintiff failed to allege publication for certain Overviews, any deficiency is technical and easily cured by amendment. Dismissal without leave to replead would be inappropriate. Accordingly, Google's motion should be denied. Alternatively, the Court should grant leave to replead.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain enough facts to state a "claim to relief that is plausible on its face," meaning there is sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard requires more than a showing of a "sheer possibility that a defendant has acted unlawfully." *Id.*

In evaluating a motion to dismiss, courts view the complaint "in the light most favorable to plaintiffs and accept all well-pleaded facts as true." *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022).

In diversity cases involving state-law defamation claims, the Court applies the substantive law of the state in which the case was filed. *Board of Forensic Document Examiners, Inc. v. American Bar Association*, 922 F.3d 827, 831 (7th Cir. 2019). Illinois defamation law therefore governs the common-law defamation claim at issue here. *Id.*

## ARGUMENT

### I. THE AI OVERVIEWS CONTAIN ACTIONABLE STATEMENTS OF FACT

Google contends that the statements in the AI Overviews cannot be actionable because the page contains a disclaimer, includes hyperlinks to other information, and uses qualifying language such as "appears." None of these features convert an otherwise straightforward factual assertion into opinion or speculation. A defendant cannot evade defamation liability by adding a disclaimer or labeling its defamatory statements as uncertain. The appropriate inquiry is whether a reasonable reader would interpret the challenged assertion as a statement of fact.

#### A. Disclaimers and/or hyperlinks to outside citations do not convert verifiable factual assertions into non-factual assertions

Before diving into the substantive law on the legal effect of disclaimers in evaluating whether an alleged defamatory statement constitutes a factual or non-factual assertion, it is important to note that the parties are in factual dispute as to the presence of disclaimers in Google's AI Overview output. Google's Memorandum of Law in Support of Defendant Google LLC's Motion to Dismiss Plaintiff's Complaint (the "MTD Memo") asserts that AI Overviews include, and included during the time period at issue, a notice explaining: "AI responses may include mistakes." MTD Memo at Page 4. The exhibits attached to Plaintiff's complaint do not reflect the presence of any such disclaimer. More importantly, counsel for Plaintiff has repeatedly tested Google's Search features and has found that such disclaimer is rarely, if ever, presented to the user, directly contradicting the assertions of Google in its MTD Memo. Attached hereto as Exhibit A is the affidavit of Daniela Pajmakovska (the "Affiant"), a paralegal at Plaintiff's counsel's office. On December 11, 2025, the Affiant ran a Google search for "James Keene." Attached to Exhibit A, labelled as Screenshots 1-5, are unedited screenshots of

her research session. As set forth in footnotes 2 and 3 of the MTD Memo, this Honorable Court may take judicial notice of the content of webpages. The search results produced and attached to Exhibit A, to the extent that they constitute statements made by Google in response to the user queries, are admissible non-hearsay. Given that Google has introduced web-based evidence which was not initially attached to the pleadings in this matter, principles of justice and fair play must allow Plaintiff to respond with their own web-based evidence to refute Google's assertions. And the screenshots attached to Exhibit A do, in fact, refute Google's position. Not only did the asserted disclaimer, "AI responses may include mistakes" not appear at any point during the Affiant's research session (Exhibit A at ¶17), but the Affiant was unable to find any indication or disclaimer whatsoever regarding the information provided by Google's AI Overview until Screenshot 5, which the Affiant was only able to reach after clicking three vertical dots to the right of the AI Overview caption. *Id*. at ¶14-15. The search results page, including the AI Overview in Screenshots 1-4 provided no visible indication suggestion that users should click the three vertical dots in order to learn valuable context regarding the source of the information asserted by Google's AI Overview. *Id*. at ¶15. And even then, the disclaimer provided was substantially different from what is alleged in the MTD Memo, stating, in relevant part, "Generative AI is a work in progress and info quality may vary," rather than the more direct and forceful disclaimer, "AI responses may include mistakes" as asserted in the MTD Memo at Page 4. Given the difficulty in locating any purported disclaimer in Google's search results, as well as the material difference from the disclaimer claimed by Google to be provided in all of its AI Overviews, there exists a material factual dispute on this issue which is not appropriately resolved at the motion to dismiss stage.

Turning to the substantive argument in this matter, the simplest definition of what is actionable defamation is as set forth in *Takieh v. O'Meara*, 497 P.3d 1000, 1006 (Ariz. Ct. App. 2021), where the court held that it is irrelevant how the speaker characterizes the statement; if a reasonable reader would understand it as factual, it is actionable. This simple statement of law fits well within the framework used in Illinois. "The Court considers several nonexclusive factors when determining whether a statement qualifies as an opinion or factual assertion: '(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content.'" *Frain Grp., Inc. v. Steve's Frozen Chillers*, No. 14 C 7097, 2015 U.S. Dist. LEXIS 29435, at *7 (N.D. Ill. Mar. 10, 2015), citing *Madison v. Frazier*, 539 F.3d 646, 654 (7th Cir. 2008). Each of the statements made by Google in the complained-of AI Overviews (Exhibits 1-4 to Plaintiff's complaint) meets this standard. It is verifiable for example, whether or not the precise, readily understood statements that James Keene is serving a life sentence for multiple convictions for drug trafficking or for murdering three women are true or not. And no literary or social context signals indicate these are anything other than statements of verifiable fact.

Google would have the Court believe that the supposed disclaimer which they assert appears with all AI Overview output transforms these otherwise factual statements into non-factual statements akin to opinions. In support of this position, Google cites *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 783 (9th Cir. 1980) for the proposition that the court must examine the totality of the context in which the statement is published; however, the case is distinguishable. In *Information Control*, the challenged statements appeared in formats which were clearly opinionated and partisan—statements of counsel and a press release describing a lawsuit between the parties as a "meritless tactical device." *Id*. Nonetheless, the

press release and statement by counsel were cautiously prefaced as "the opinion of Genesis' management." *Id*. The statements at issue in the instant case are statements of verifiable facts, not characterized as opinion in any way, and clearly divorced from the kind of context discussed by the court in *Information Control*, *i.e.* "epithets, fiery rhetoric or hyperbole" which would lead a reasonable reader or listener to understand the statements to be opinion rather than fact. *Id*. Google also cites *Van Duyn v. Smith*, in a similar argument regarding context, but again, the context discussed in that case is distinguishable. In *Van Duyn*, the defendant published a satirical anti-abortion "wanted" poster identifying the plaintiff and including the phrase "for prenatal killing"; in that context, the *Van Duyn* court reasoned, the statement was a kind of moral, political, or ideological persuasion—a form of rhetorical speech contributing to an ideological debate which the average reader would understand to be figurative, rather than a factual allegation of homicide. Recognizing that this kind of context, where the accusation's figurative nature is evident upon first glance of the "wanted" poster, is a wholly different form of "context" than Google is suggesting the Court consider in the instant case.

Rather than stretching the concept of "context" far beyond the manner in which it is used in *Information Control* and *Van Duyn*, a more appropriate and workable approach would be to analyze how courts have historically addressed analogous cases. Historically, when dealing with allegedly defamatory newspaper publications, courts have routinely found that an explanation, disclaimer, or equivocation buried within an article, and which requires the reader to parse through the article to find the truth, is not sufficient to shield a newspaper from their publication of a prominent defamatory headline. It has been held, "[W]here oversized headlines are published which reasonably lead the average reader to an entirely different conclusion than the facts recited in the body of the story . . . the headlines may be considered separately with regard

to whether a known falsehood was published. As the court said in *Afro-American Publishing Co. v. Jaffe, supra*, at p. 655 '[w]hat counts is not the painstaking parsing of a scholar in his study, but how the newspaper article is viewed through the eyes of a reader of average interest.'" *Sprouse v. Clay Commc'n*, 158 W. Va. 427, 441-42, 211 S.E.2d 674, 686 (1975), certiorari denied, 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107, rehearing denied, 423 U.S. 991, 96 S.Ct. 406, 46 L.Ed.2d 311, citing *Afro-American Publ'g Co. v. Jaffe*, 125 U.S. App. D.C. 70, 366 F.2d 649, 655 (1966).

By analogy, additional information supposedly undermining the untruthful statements made in the AI Overviews in this case (when such information is only ascertainable by following multiple hyperlinks and meticulously parsing through the cited sources) should be treated not as "context" for the defamatory statement, but rather, should be considered irrelevant, the same as an otherwise truthful newspaper article is irrelevant to the question of whether a headline is defamatory. To suggest such a buried disclaimer or citations should operate as a shield would be tantamount to allowing a newspaper to print a defamatory statement in bold font on its front page and then evade liability by burying a disclaimer in fine print on an interior page. The Restatement 2d of Torts supports this conclusion. "Headlines may make libellous a news story, the text of which is literally true." Restat 2d of Torts, § 581A , citing *Pratt v. Pioneer Press*, 30 Minn. 41, 14 N.W. 62 (1882); *Jones v. Garner*, 250 S.C. 479, 158 S.E.2d 909 (1968); *Norfolk Post Corp. v. Wright*, 140 Va. 735, 125 S.E. 656 (1924). Google only references in their motion to dismiss two instances where a disclaimer may be considered as "context" for the purpose of evaluating the factual nature of an alleged defamatory statement. The first is the prominent mandatory gating mechanism at issue in *Pace v. Baker-White*. In that case, before being able to

search the website, a full screen mandatory disclaimer in large font was presented to the user in an overlay, the very first paragraph of which was:

> DISCLAIMERS
>
> 1. Multiple Meanings
>
> The Facebook posts and comments in this database concern a variety of topics and express a variety of viewpoints, many of them controversial. These posts were selected because the viewpoints expressed could be relevant to important public issues, such as police practices, public safety, and the fair administration of the law. The posts and comments are open to various interpretations. We do not know what a poster meant when he or she typed them; we only know that when we saw them, they concerned us. We have shared these posts because we believe they should start a conversation, not because we believe they should end one.

*Pace v. Baker-White*, 432 F. Supp. 3d 495, 501 (E.D. Pa. 2020). The user could not conduct a search on the site unless the user clicked "I understand." *Id*. More importantly, this disclaimer clearly addressed the exact fundamental nature of the website in *Pace*, which collected and shared Facebook posts of police officers deemed "relevant to public issues." *Id*. No such prominent gating mechanism which addresses the fundamental nature of the content the user is about to consume interposes itself when a user chooses to conduct a Google search.

Next, in *Walters v. OpenAI, LLC,* when the user repeatedly requested specific information regarding a court case, OpenAI's chat program, ChatGPT, an AI platform generally similar to Google's AI Overview, although focused more on providing humanlike interaction in "chats" (as opposed to providing AI Overviews of internet searches) repeatedly and directly responded to the user's inquires warning him that ChatGPT could not access the internet or follow the link to the complaint the user provided, and that ChatGPT did not have information about the period of time in which the complaint was filed, which was after its "knowledge cutoff date." *Walters v. Openai, L.L.C.,* 2025 Ga. Super. LEXIS 2747, *8-9; 2025 LX 448965; WL 2979163. These

kinds of direct in-line responses from the AI, expressly informing the user that ChatGPT was unable to do what the user was asking it to do rise to the level of context sufficient to be considered in evaluating the factual nature of the statements made by ChatGPT. Such direct in-line responses indicating that the AI could not answer the user's question were not present in any of the AI Overviews complained of in the instant case.

In short, Google attempts to expand the concept of "context" far beyond the manner in which it is used in the cases Google cites. In the instant case, Google made definitive seemingly factual claims about Plaintiff's criminal history and incarceration status. Nothing in the presentation of Google's AI Overviews suggests that these statements are rhetorical, satirical, ideological, or hypothetical. The proper focus is on the meaning conveyed by the challenged statement itself. A person encountering Google's prominently displayed assertion that Plaintiff is serving a life sentence for murdering three women, for example (regardless of whether another source, found only by parsing through citations less prominently displayed on the webpage and regardless of whether a disclaimer may be found somewhere else on the webpage) would reasonably understand the prominent claims at the top of the AI Overview to be (like a libelous newspaper headline) actionable assertions of fact.

**B. Qualifying or prefatory language does not negate the factual implication**

Google also cites hedging language in their AI Overviews. Courts have consistently held that prefacing a statement with terms like "it appears," "it seems," or "to my knowledge," does not immunize an otherwise factual assertion unless the statement taken as a whole appears to be expressing a subjective view, rather than a factual assertion. The 7th Circuit Court of Appeals has held, "Prefatory language does not control whether the statement is defamatory [internal citations omitted]. This court has held that statements of fact are not shielded from an action for

defamation even if prefaced with . . . words [such as] "in my opinion." *Haynes v. Alfred A. Knopf, Inc*., 8 F.3d 1222, 1227 (7th Cir. 1993). As previously discussed, [defendant's] statements are not expressing a subjective view." *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 535 (7th Cir. 2009).

Similarly, the assertion that any libelous statement is merely "according to Wikipedia" is not a defense. The Illinois First District Court of Appeals in overruling the dismissal of a defamation claim by the trial court, reasoned, "The fact that the publication of the scandalous matter purports to be based on rumor is no defense. Publication of libelous matter, although purporting to be spoken by a third person, does not protect the publisher, who is liable for what he publishes [internal citations omitted]. Very pertinent to this point is the comment in Newell on Slander and Libel (4th Ed.) § 300. 'A man cannot say there is a story in circulation that A. poisoned his wife or B. picks C.'s pocket in the omnibus, or that D. has committed adultery, and relate the story, and when called upon to answer say: "There was such a story in circulation; I but repeated what I heard, and had no design to circulate it or confirm it"; and for two very plain reasons: (1) The repetition of the story must in the nature of things give it currency; and (2) the repetition without the expression of disbelief will confirm it. The danger -- an obvious one -- is that bad men may give currency to slanderous reports, and then find in that currency their own protection from the just consequences of a repetition.'" *Cobbs v. Chi. Def.,* 308 Ill. App. 55, 59, 31 N.E.2d 323, 325 (1st Dist., 1941).

Synthesizing the reasoning of *Giant Screen Sports* and *Cobbs*, it is clear that prefacing a statement with equivocal or hedging language such as, "it appears there might be some confusion" then, in the next sentence, making an otherwise seemingly factual assertion, either with or without the additional "according to Wikipedia" statement does not transform the

assertion into mere subjective opinion, and is fundamentally no different from repeating a rumor without expressing disbelief. For the exact same reasons as set forth in *Cobbs* above, such a statement remains actionable as defamation. The presence of mild qualifiers or subtle equivocation (short of an unequivocal statement of disbelief) neither alters how a reasonable reader would interpret the statement nor mitigates the harm of repeating such untruths.

In conclusion, therefore, the context within which the AI Overview output substantially similar to the output set forth in Exhibits 1-4 of Plaintiff's complaint is limited to the seemingly factual statements made in each such exhibit. Prefatory statements like "it appears" and statements of sources, such as Wikipedia, appended to or preceding clear statements of verifiable fact, are insufficient to transform the seemingly factual statements into opinions or suppositions. This is not a case where the defamatory statements are made in a persuasive or argumentative context and it is not reasonable to conclude that the statements made by Google's AI Overviews are hyperbole or opinion. Nor would a disclaimer (if actually displayed) operate to resolve this matter in Google's favor at the pleading stage. The presumably factual statements made by Google's AI Overview, when viewed in the light most favorable to the Plaintiff, being more prominently displayed than any supposed disclaimer, are more akin to defamatory newspaper headlines, and case law has long held that the reasonable reader is not expected to parse his way through a newspaper article like a scholar in order to debunk a defamatory headline. A defamatory headline, being more prominently displayed than an otherwise truthful newspaper article, is actionable on its own, and the truth of the news article is no defense to the defamatory headline. The same is true here. A reasonable user provided with seemingly simple, verifiable, factual AI Overview statements, presented prominently at the top of their search results would

not reasonably believe he needed to parse his way through sub-menus or unlabeled hyperlinks on a quest to verify the output generated by Google's AI Overview feature.

## II. PLAINTIFF HAS ADEQUATELY ALLEGED ACTUAL MALICE

As a preliminary matter, Plaintiff does not dispute that he is a limited public figure and therefore must plead actual malice with respect to statements relating to his publicity. The governing standard is set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), which holds that actual malice exists where a defendant knew a statement was false or acted with reckless disregard for its truth or falsity. Google contends that Plaintiff fails to plead actual malice because he has not identified a specific Google employee who knew that the statements generated by Google's AI Overviews were false. This argument misapprehends both the pleading standard and the allegations in the Complaint. Plaintiff alleges that he directly notified Google on May 27, 2025, and again on May 31, 2025, that its AI Overviews were publishing false information about him. (Complaint ¶¶22, 27.) Despite this notice, Google allowed similar defamatory statements to continue appearing through June 2025 and thereafter. Plaintiff further alleges that Google repeatedly acknowledged and apologized for the false statements appearing on its platform, thereby admitting awareness of their existence, yet continued to permit their publication with actual knowledge of their falsity. (Complaint ¶¶33–35.)

These allegations go well beyond a mere recitation of the elements of actual malice. Plaintiff concedes that while state of mind may generally be pleaded, allegations of actual malice require some factual support. That requirement is satisfied here by allegations of continued false publication after notice and acknowledgment—facts that support a plausible inference of knowledge or reckless disregard. Plaintiff cannot reasonably be expected, prior to discovery, to

identify the specific individuals within Google responsible for receiving, escalating, or acting upon his complaints. Google is a vast corporate entity with hundreds of thousands of employees, including managers, engineers, developers, technicians, and executives who may bear responsibility for the content and oversight of AI Overview outputs. Without discovery, Plaintiff has no access to the internal routing of his complaints, the identity of the individuals who reviewed them, or the decision-makers responsible for supervising factual accuracy.

At the pleading stage, Plaintiff need not allege the internal mechanics of Google's systems or name the specific employees responsible for the continued publication of false statements. Allegations that Google received notice of falsity and nevertheless allowed defamatory statements to persist are sufficient to plead actual malice. (Complaint ¶¶22, 27, 33–35.)

Google's reliance on cases decided at summary judgment is misplaced, as Plaintiff has not yet had the benefit of discovery. Moreover, in the few cases cited by Google that resulted in dismissal at the pleading stage, the complaints suffered from independent fatal defects—such as a complete failure to allege any facts bearing on state of mind, as in *Meja v. Telemundo Mid-Atlantic, LLC*, 440 F. Supp. 3d (D. Md. 2020). That is not the case here. Plaintiff's Complaint contains specific factual allegations supporting actual malice, including notice, acknowledgment, and continued publication. Plaintiff must therefore be afforded discovery to explore the internal handling of his complaints, the escalation process within Google, and the individuals responsible for supervising the accuracy and truthfulness of Google's AI Overview outputs.

## III. GOOGLE'S SUBSTANTIAL TRUTH ARGUMENT FAILS AT THE PLEADING STAGE

Google argues that the statement that Plaintiff "was convicted of drug trafficking" (Exhibit 3 to Plaintiff's complaint) is substantially true because Plaintiff was convicted of Conspiracy to Distribute Cocaine. In support, Google references to *Masson v. New Yorker Mag., Inc.*, which states, "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.' [Citations Omitted.] Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson v. New Yorker Magazine*, 501 U.S. 496, 517, 111 S. Ct. 2419, 2433 (1991), citing R. Sack, Libel, Slander, and Related Problems 138 (1980). The distinction between conspiracy to distribute versus actual drug trafficking is meaningful in the mind of a layperson. That is, this is no minor legal distinction. Plaintiff asks the Court to take judicial notice of the Wiktionary definition of drug trafficking, a readily accessible website, for the purpose of establishing what the term "drug trafficking" means in common everyday parlance. See Exhibit B hereto. As the Court can see, the definition set forth therein is "The process of smuggling, distributing, and selling illegal drugs." Exhibit B. Drug Smuggling is a separate crime from Distribution, which is also, technically a separate crime from Conspiracy to Distribute. The crimes are in fact different. Additionally, this is not a case where common a colloquialism merely stands in for a more formal legal definition (e.g. domestic battery or 'wife beating' versus simple battery against a spouse, or calling a crime a rape when it is formally charged as sexual assault).

A reasonable jury could certainly conclude that the sting or gist of being accused of drug smuggling and selling, along with the popularized characterization of drug smugglers or drug

dealers as being violent scofflaws, is significantly worse than the sting or gist of the actual conspiracy charge upon which Plaintiff was convicted, particularly if a jury were to conclude that the common layperson understands the ease with which a conspiracy charge may be established for nonviolent conduct merely adjacent to drug distribution. As Google correctly points out, where "no reasonable jury could find that substantial truth had not been established, the question is one of law, and the matte may be raised in a motion to dismiss." *Andrews v At World Props., LLC*, 2023 IL App (1st) 220950, ¶16. Here, a reasonable jury could absolutely conclude that the sting or gist of an accusation of drug trafficking is dramatically worse than that of a conspiracy to distribute; therefore, this is a question of fact, inappropriate for resolution in a motion to dismiss.

## IV. DEFICIENCIES IN PLEADING MAY BE RECTIFIED BY LEAVE TO REPLEAD

Google argues that two of the AI Overviews (Exhibits 3 and 4 to the Complaint) were not alleged to have been viewed by any third parties. Publication requires communication to only a single third person. The failure to plead publication as to the statements set forth in Exhibits 3 and 4 was a mere clerical oversite, easily rectified upon leave to replead. Additionally, any other factual or technical deficiencies found in Plaintiff's pleading here, under the circumstances and facts alleged which have been alleged, may likewise be rectified upon repleading. This is Plaintiff's initial complaint. No prior leave to replead has been granted. "Pleading rules favor decisions on the merits rather than technicalities, *see Foman*, 371 U.S. at 182, and also that leave to amend pleadings should be freely given, Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.")" *Stanard v. Nygren*, 658 F.3d 792, 800-01 (7th Cir. 2011), citing *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962).

## CONCLUSION

Plaintiff has adequately alleged that Google published false and defamatory factual statements, rather than opinions, supposition, argument, or conjecture, plausibly with reckless disregard or knowledge of their falsity. In the event that the Court should find that any technical or factual allegation of the complaint is insufficient, leave to replead should be granted.

WHEREFORE, for the above reasons, Plaintiff respectfully prays that this Honorable Court deny Google's motion to dismiss Plaintiff's complaint or in the alternative, grant leave to replead, and for such other and further relief as is just and equitable.

Respectfully submitted;
By: *\/s/ T. Paul S. Chawla*
Counsel for Plaintiff

T. Paul S. Chawla
ARDC No.: 6206722
Oak Brook Legal, P.C.
3908 N. Cass Ave.
Westmont, IL 60559
Tel.: 630 325-5557
tschawla@oakbrooklegal.com
jpelton@oakbrooklegal.com

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 12, 20225, I caused this document to be filed with the clerk of the court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the court. On this date I further caused a copy of the foregoing document to be served on the individuals listed below via email:.

Thomas G. Hentoff, thentoff@wc.com
Nicholas G. Gamse, NGamse@wc.com
Jason H. Clayton, jclayton@wc.com
Claire R. Cahill
Williams & Connolly LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: (202) 434-5000

By: */s/ T. Paul S. Chawla*
Counsel for Plaintiff