UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES KEENE,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | No. 25 C 11431<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James "Jimmy" Keene ("Keene") brings a claim of defamation per se against Defendant Google LLC ("Google") based on statements appearing in various Google AI Overviews. Google moves to dismiss the complaint pursuant to Rule 12(b)(6). For the following reasons, that motion is granted in part and denied in part.

**Background**

Keene is an author, television producer, and former FBI operative. R. 1-1 ¶ 5. In 1997, he pled guilty to conspiracy to distribute drugs and was sentenced to ten years in prison. R. 14 at pp. 2, 13; *see* R. 14-1. In exchange for a pardon, Keene agreed to work with the FBI as a prison informant to help gather evidence against suspected serial killer Larry Hall. R. 1-1 ¶ 5; R. 14 at p. 2. Hall was ultimately convicted, and Keene's conviction was expunged. *See* R. 1-1 ¶ 5; R. 14 at p. 14. Keene published a memoir recounting this experience that was subsequently adapted into an Apple TV miniseries titled "Black Bird." R. 1-1 ¶¶ 5–6.

Between approximately May 24, 2025, and June 27, 2025, Keene alleges that at least four Google "AI Overviews" contained false statements in response to searches about him. R. 1-1 ¶¶ 15, 18, 25, 29. Three of the AI Overviews were generated in response to a search for "Jimmy Keene net worth." *Id*. at Ex. 1–3. One stated Keene was "serving a life sentence without parole for multiple convictions" ("AI Overview 1"). *Id*. at Ex. 1. Another stated he was "serving a life sentence without parole for the murders of three women" ("AI Overview 2"). *Id*. at Ex. 2. A third stated Keene "was convicted of drug trafficking" ("AI Overview 3"). *Id*. at Ex. 3. Finally, in response to the query "Is Jimmy Keene still alive" a fourth stated he was "serving a life sentence without parole in Butner, North Carolina" ("AI Overview 4"). *Id*. at Ex. 4. Each AI Overview cited a Wikipedia page as the source of the information and provided a link to that page. *Id*. at Ex. 1–4. However, the Wikipedia page did not contain the false statements in the AI Overviews. R. 11 ¶¶ 17, 30. AI Overviews 1 and 2 were seen by various family members, friends, and acquaintances. *Id*. ¶ 21.

Keene complained to Google about the false statements on three occasions: May 27, 2025, May 31, 2025, and after June 27, 2025. R. 1-1 ¶¶ 22, 27, 32. Google allegedly apologized to Keene after each complaint and deemed the statements errors made by its Artificial Intelligence. *Id*. ¶ 23, 28, 32.

Keene filed his complaint alleging one count of defamation per se on July 30, 2025, in the Circuit Court of Cook County. R. 1-1. Google removed the suit to federal court on September 22, 2025. R. 1. Google moved to dismiss on November 5, 2025, pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 14.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Discussion

In order to state a claim of defamation per se, Keene must plead that Google made (1) a false statement of fact about him, (2) that was published to a third party, (3) and caused damages. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill. 2d 558, 579 (2006). "A statement is defamatory *per se* if its harm is obvious and apparent on

its face." *Id*. In Illinois, words that impute a person has committed a crime are considered defamatory per se. *Id*. at 579–80 (citations omitted). Additionally, because Keene concedes that he is a limited public figure, he must plead that the statement was published with actual malice. *See Gertz v. Welch*, 418 U.S. 323, 351–52 (1974).

Google contends that Keene's motion should be dismissed for failing to state a claim of defamation for four reasons: the AI Overviews are not statements of fact because they are merely summaries that are susceptible to error; AI Overview 3 is substantially true; Keene does not plausibly plead that Google employees acted with actual malice; and Keene has not alleged that AI Overviews 3 and 4 were published to third parties. The Court considers each in turn.

I. Statements of Fact

Google argues that Keene's claim should be dismissed because AI Overviews 1, 2, and 4 are not statements of fact due to their surrounding context: Google's disclaimer, the contradictory source cited in the AI Overviews, and the "cautious language" in the AI Overviews. R. 14 at pp. 9–10. In determining whether the AI Overviews are statements of fact, courts consider (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that it has factual content. *Solaia Tech.*, 221 Ill. 2d at 581. While this is a question of law for the court to determine, the statement is evaluated from the perspective of an ordinary reader. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 398 (2008) (citations omitted).

First, Google argues that its standard disclaimer indicates that AI Overviews are merely "starting points" using rapidly evolving technology and not statements of fact. R. 14 at p. 10. According to Google, a disclaimer appears along with all AI Overviews warning that AI Overviews "may include mistakes." R. 14 at pp. 9–10. However, the disclaimer Google references is not identified in the Complaint nor included in the attached exhibits. Indeed, Keene maintains that additional "test" Google searches conducted by his counsel did not include any such disclaimer. R. 4–5. Whether or not a disclaimer was present is a factual dispute not to be determined at this stage. In ruling on a motion to dismiss, the Court must accept all well-pleaded facts as true and draw all reasonable inferences in Keene's favor. Therefore, the Court's analysis proceeds without consideration of an alleged disclaimer.

Second, Google argues that users could easily verify that the AI Overviews contain false information based on the linked Wikipedia article or other search results. But Google's cited cases do not support that merely linking to a source with correct information vitiates defamation. Google cites *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087 (N.D. Ill. 2016), in which the defendant's interpretation of a report as "misleading" was an opinion and therefore not defamation. *Id.* at 1113. While the underlying report was shown along with the statement and provided context, it was not the presence of the report alone that made the comment not actionable as defamation, but rather that the defendant was "expressing a subjective view or interpretation" of the report. *Id.* The mere act of providing a citation to an assertion does not convert that assertion from fact to opinion. Accordingly, citing

Wikipedia in an AI Overview does not convert the statements in the overview to opinions.

Google also cites *Walters v. Openai, L.L.C.*, No. 23-A-04860-2, 2025 WL 2979163 (Ga. Super. May 19, 2025), in which a journalist asked ChatGPT, an AI large language model ("LLM"), to summarize a legal document. *Id.* at * 1–2. The journalist intentionally sought out an LLM, had prior experiences when the LLM provided him "flat-out fictional responses," assented to an acknowledgement that responses may include "incorrect Output," reviewed multiple disclaimers regarding the potential for information that could be "misleading" or "inaccurate," and received responses stating that the LLM could not provide the desired information. *Id.* at *2. The court granted summary judgment in favor of the defendant in part because a reasonable reader in the journalist's position "could not have concluded that the challenged ChatGPT output communicated 'actual facts.'" *Id.* at *3.

Google's reliance on *Walters* is unpersuasive because the context in the instant case is wholly distinct. From the perspective of an ordinary user, asking an AI LLM to generate work product and receiving numerous indicia of falsity is different from a basic Google search. In Google's own words, a Google search is meant to "connect a user most efficiently to relevant and reliable information." R. 14 at p. 3. Although Google has now developed its own built-in AI LLM to "enhance" a search by summarizing information, *id.*, an ordinary user searching "Jimmy Keene net worth" on Google is seeking factual information, not AI work product. Only after a user read the linked Wikipedia article would any contradiction become apparent, but without

reason to question the AI Overviews, many ordinary users would not conduct that further research. Google asserts that AI Overviews are just the "starting point" for users to "dig deeper." R. 21 at p. 5. To the contrary, factual statements with citations to outside sources provide contextual support that the AI Overviews are summarizing objectively verifiable facts contained therein and additional research is not required. "If it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993). But that is not the case here. By pointing out that the statements in the AI Overviews are objectively verifiable, Google concedes the very point it is arguing against—the statements are facts.

Last, Google argues that the AI Overviews are not statements of fact because they include equivocal language that conveys uncertainty about the responses. This argument is unavailing. AI Overview 4 does not contain any equivocal language, nor do the at issue statements in AI Overviews 1 and 2—"Jimmy Keene is serving a life sentence without parole for multiple convictions" and "Jimmy Keene is serving a life sentence without parole for the murders of three women" respectively. While both AI Overviews 1 and 2 begin by stating, "[i]t appears there might be some confusion as the 'Jimmy Keene' mentioned in the search results refers to a criminal not a celebrity with a known net worth[,]" this sentence does not qualify or otherwise undermine the allegedly defamatory statements. Rather, it casts doubt on the premise of the Google search "Jimmy Keene net worth." Regardless, a specific, false factual claim, like

serving a life sentence, can still be defamatory even if it is "couched" in prefatory language. *See Culbertson v. Beck*, No. 25-CV-10695, 2026 WL 1999140, at *5 (N.D. Ill. July 10, 2026) (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19 (1990); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 727 (7th Cir. 2004)). Only if a statement "cannot be reasonably interpreted as stating actual fact" is it not defamatory. *Solaia Tech.*, 221 Ill. 2d at 581–82 (citing *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 14–15 (1992)). Here, the AI Overviews are quite reasonably interpreted as stating actual fact.

II. Substantial Truth

Google next argues that AI Overview 3 is not defamatory because it is substantially true. AI Overview 3 states that Keene "was convicted of drug trafficking." R. 1-1 Ex. 3. In fact, Keene was convicted of felony conspiracy to distribute cocaine. To establish truth as a defense to defamation, it is not necessary to establish the literal truth of the statement but rather the "substantial truth." *Vachet v. Cent. Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir. 1987). "[A] showing of the truth of the 'gist' or 'sting' of the alleged defamatory imputation is sufficient." *Id.* (quoting *Tunney v. Am. Broad. Co.*, 109 Ill. App. 3d 769, 774 (1st Dist. 1982)). "[W]here no reasonable jury could find that substantial truth had not been established, the question is one of law, and the matter may be raised in a motion to dismiss." *Andrews v. At World Props., LLC*, 236 N.E.3d 540, 549 (Ill. App. Ct. 2023).

Keene asserts that the distinction is meaningful and that a reasonable jury could conclude that drug trafficking is "dramatically worse" than conspiracy to

distribute. R. 19 at pp. 15–16. But courts have repeatedly found that a statement is not "made false by substituting [a] word in common usage for an exact legalism." *See Simonson v. United Press Int'l, Inc.*, 654 F.2d 478, 482 (7th Cir. 1981) (holding that "rape" was not a false characterization of "second-degree sexual assault"); *see also Harrison v. Chi. Sun-Times, Inc.*, 793 N.E.2d 760, 772 (Ill. App. Ct. 2003) (finding substantial truth where "kidnapped" was used to describe "wrongful removal" in violation of Hague Convention); *Hardiman v. Aslam*, 125 N.E.3d 1185, 1193 (Ill. App. Ct. 2019) (finding substantial truth where "conviction for misdemeanor domestic violence" was used to describe a plea to simple battery of the defendant's wife); *Sivulich v. Howard Publ'ns, Inc.*, 466 N.E.2d 1218, 1220 (Ill. App. Ct. 1984) (finding substantial truth where "[c]harges of aggravated battery" described a civil suit as opposed to criminal charges). Here, "drug trafficking" is a term in common usage that encompasses drug distribution often as part of a larger enterprise. Indeed, the U.S. Code expressly labels "any felony punishable under the Controlled Substances Act"—which includes Keene's offense, 21 U.S.C. § 846—a "drug trafficking crime." 18 U.S.C. § 924(c)(2). And even Keene's proposed definition of drug trafficking includes "distributing . . . illegal drugs." R. 19 at p. 15.

Ultimately, a "statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson v. New Yorker Mag.*, 501 U.S. 496, 517 (1991) (quoting R. Sack, Libel, Slander, and Related Problems 138 (1980)). Both the statements that Keene "was convicted of drug trafficking" and "was convicted of felony conspiracy to

distribute cocaine" impart the same impact on the mind of a reader: Keene was convicted of a serious drug distribution offense. The fact that Keene's conviction was later expunged does not negate substantial veracity. *See Hardiman*, 125 N.E.3d at 1193–94 (finding statement plaintiff committed a crime he pled guilty to was substantially true although it had been expunged). The Court grants Google's motion to dismiss the defamation claim pertaining to AI Overview 3 because it is substantially true.

III. Actual Malice

Google next argues that it did not act with the requisite malice to be liable for defamation. Google asserts that Keene is a limited public figure regarding commentary on his own life's story, which Keene does not dispute. And because Keene is a public figure, Google must have acted with actual malice to be liable for defamation. *See Gertz*, 418 U.S. at 351–52. A plaintiff "may establish actual malice by proving either that the defendant published the defamatory statement with knowledge of its falsity or with reckless disregard for whether it was false." *Woods v. Evansville Press Co.*, 791 F.2d 480, 484 (7th Cir. 1986). Probative evidence of recklessness includes a publisher's knowledge of serious factual inconsistencies, as well as the failure to investigate or independently verify disputed or questionable factual assertions. *Id.* at 485.

Keene contends that he has sufficiently pled actual malice because he directly notified Google on three occasions that it was publishing false information about him. R. 1-1 ¶¶ 22, 27, 32. Despite this notice, Google continued to publish similar

defamatory statements through at least late June 2025. *Id.* at ¶ 29. Keene further alleges that Google repeatedly acknowledged and apologized for the false AI Overviews appearing on its platform, thereby admitting awareness of their existence, yet continued to permit their publication with actual knowledge of their falsity or at minimum reckless disregard for their truth. *Id.* at ¶¶ 33–35.

Google argues that Keene has not adequately pled actual malice because Keene's allegations are conclusory and he does not allege that he informed the individuals at Google responsible for publishing the AI Overviews about their alleged falsity. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) (stating that a plaintiff must "br[ing] home" the state of mind required for actual malice "to the persons in the . . . organization having responsibility for the publication"). But Keene pleads that he corresponded with Google multiple times regarding the false statements contained in the AI Overviews. Prior to discovery, Keene may not know the names of the responding individuals. But at this stage, allegations of correspondence plausibly indicate that such emails were circulated to individuals at Google responsible for policing the AI Overviews, who then, with knowledge of falsity of the AI Overviews, took no corrective action and the statements continued to be published. *See Starbuck v. Google LLC*, No. N25C-10-211 MAA, 2026 WL 2137827, at *12 (Del. Super. Ct. July 24, 2026) (denying a motion to dismiss a defamation claim against Google for statements published by its AI platform).

Google also attempts to introduce emails to discredit claims that Google acknowledged and apologized to Keene. However, the introduction of such evidence

is not pertinent at the pleading stage. Even if the Court considered the emails, while they do not support the allegations of repeated apologies, they do support that Keene repeatedly alerted Google that the AI Overviews could be defamatory. *See* R. 14 Exs. 3–6. Google's Exhibit 3 shows that Keene filled out and submitted a form to "report a legal removal issue" to Google on May 25, 2025, which described in detail his complaints concerning the AI Overviews. *Id.* at Ex. 3. Either this report made its way to an individual at Google, which could plausibly support actual knowledge of falsity, or no human at Google reviewed the legal removal request and subsequent correspondence, which could plausibly support reckless disregard for falsity. Without more information, the emails are not dispositive. At this stage, the Court need only determine whether Keene has plausibly alleged actual malice. He has.

IV. Publication to Third Parties

Last, Google argues that Keene does not plausibly allege publication to a third party of AI Overviews 3 and 4. Keene concedes that this was a "mere clerical oversi[ght]" and seeks leave to replead. R. 19 at p. 16. The Court grants Google's motion to dismiss AI Overview 4 for failing to allege publication and grants Keene leave to amend. The Court already granted Google's motion to dismiss AI Overview 3 due to its substantial truth.

## Conclusion

For the foregoing reasons, the Court denies Google's motion to dismiss AI Overviews 1 and 2, and grants Google's motion to dismiss AI Overviews 3 and 4 without prejudice. Keene may file an amended complaint by October 13, 2026.

ENTERED:

Thomas M Durkin

Honorable Thomas M. Durkin
United States District Judge

Dated: September 14, 2026